J-A22036-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JUDITH ANNE KOZLOWSKI | |
| Appellant | No. 77 MDA 2020 |

Appeal from the Judgment of Sentence entered December 10, 2019
In the Court of Common Pleas of Berks County
Criminal Division at No: CP-06-SA-0000448-2019

BEFORE:  SHOGAN, J., STABILE, J., and MURRAY, J.:

MEMORANDUM BY STABILE, J.:                **FILED NOVEMBER 19, 2020**

Appellant, Judith Anne Kozlowski, appeals from the judgment of sentence the Court of Common Pleas of Berks County entered December 10, 2019.  Upon review, we affirm.

The trial court summarized the factual background as follows.

On July 3, 2019, Isabella Sanchez was living with her father, Mr. Conan Sanchez, at Mr. Sanchez' apartment[.]  Isabella Sanchez [("Isabella")] is the maternal granddaughter of Appellant[.]  Mr. Conan Sanchez is Isabella's father and Appellant's former son-in-law.  Appellant had never lived at the apartment and had never previously entered the apartment.  Mr. Sanchez additionally testified that Appellant did not have permission to be in his apartment.

At some point during the day, Appellant had been trying to get a hold of her granddaughter, Isabella.  Appellant could not reach her granddaughter by phone and decided that she was going to come to the apartment and confront Isabella.  The controversy surrounded Isabella's decision to go back to college and the payment of those classes.

Upon arriving at the apartment, Appellant went to the rear patio door and began knocking. Isabella and her father both credibly testified that neither one of them invited Appellant into the apartment. Mr. Sanchez specifically testified that Appellant stated: "[I]f you're not going to come out, I'm going to come in." Appellant entered the apartment and began to have a conversation with her granddaughter, Isabella. The conversation quickly turned into a verbal confrontation wherein Appellant was verbally attacking her granddaughter.

Within a matter of sixty (60) seconds, Isabella became very upset and Mr. Sanchez demanded that Appellant leave the apartment, Appellant remained in the apartment for nearly 15-20 minutes and refused to leave; Mr. Sanchez told Appellant to leave approximately three (3) or four (4) times. Despite these demands, Appellant refused to leave and Mr. Sanchez testified that he was about to call the police.

At this point in the confrontation, Appellant threatened, and did in fact, call 911. Appellant testified that the reason she did not leave was because Mr. Sanchez positioned his body in such a manner that prevented her from leaving. Interestingly, however, Appellant further testified that "as long as I was talking to the dispatch lady, I felt safe that I could walk out of the apartment. I told him close your own damn door." At some point, Appellant voluntarily walked out of the apartment and then waited for the police to arrive.

Regarding the inability to leave the apartment, Isabella and her father testified credibly that Appellant was told on several occasions to leave. Mr. Sanchez admitted that, although the conversation got heated, the front door was directly behind Appellant and he never blocked her pathway to leave. Appellant testified that, although the door was directly behind her, she did not see the door.

Officer Brian MacIntyre was called to the stand and testified that he arrived on the scene and spoke to Isabella and Conan Sanchez, as well as Appellant. Officer MacIntyre testified that he took a report based on their statements. When asked about the testimonies of Isabella and Conan Sanchez, Officer MacIntyre stated that both of their testimonies "mirrored" what they told him on July 3, 2019 at the scene. When asked about the testimony of

Appellant, however, Officer MacIntyre testified that Appellant never told him that she was unable to leave. . . .

Trial Court Opinion, 2/27/20, at 2-4 (citations to the record and footnote omitted).

The procedural background can be summarized as follows. Following the incident described above, on July 28, 2019, Appellant was cited with defiant trespass under 18 Pa.C.S.A. § 3503(b)(1)(i). On September 4, 2019, Appellant was found guilty of the charge by Magisterial District Judge Eric Taylor, following a hearing at which she was represented by counsel. A timely appeal followed.

On December 10, 2019, the Court of Common Pleas held a *de novo* trial, at the conclusion of which Appellant was found guilty as charged and sentenced to pay a $25 fine and court costs. Appellant was represented by counsel before the Court of Common Pleas. This appeal followed.

We begin by noting our standard of review. Where the trial court has heard a case *de novo*, we must determine whether the findings of fact are supported by competent evidence or any error of law has occurred. ***See***, ***e.g.***, ***Commonwealth v. Kaufman***, 849 A.2d 1258, 1259 (Pa. Super. 2004). "We will not disturb the lower court action on appeal absent a manifest abuse of discretion." ***Commonwealth v. Gray***, 514 A.2d 621, 622 (Pa. Super. 1986) (citing ***Commonwealth v. Gussey***, 466 A.2d 219, 221 (Pa. Super. 1983)).

We recognize that Appellant presents several claims for our review. First, Appellant challenges the sufficiency of the evidence. When considering

a challenge to the sufficiency of the evidence, we must view the evidence presented in a light most favorable to the Commonwealth, the verdict winner, and draw all reasonable inferences therefrom. *Kaufman, supra*. We must then determine whether the evidence was sufficient to permit the fact-finder to conclude that each and every element of the crimes charged was proven beyond a reasonable doubt. *Id.* Any question of doubt is for the fact-finder, unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances. *Id.*

"A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by . . . actual communication to the actor[.]" 18 Pa.C.S.A. § 3503(b)(1)(i). "Thus in order to establish a violation it is necessary to prove that the defendant: 1) entered or remained upon property without a right to do so; 2) while knowing that he had no license or privilege to be on the property; and 3) after receiving direct or indirect notice against trespass. The crime of defiant trespass thus includes an element of intent or *mens rea*." **Commonwealth v. Namack**, 663 A.2d 191, 194 (Pa. Super. 1995).

Appellant argues that: (i) she reasonably believed that she had been invited to enter Isabella's apartment through acquiescence by Isabella or through express consent of Mr. Sanchez, (ii) Mr. Sanchez prevented her from leaving the apartment, and (iii) she did not hold any malicious motive in wanting to interact with Isabella or Mr. Sanchez.

The trial court, however, sitting as fact-finder,

> [c]redit[ed] the believable testimony of Isabella Sanchez and Conan Sanchez that at no time was Appellant authorized to enter. Indeed, Appellant's own testimony contradicts her assertions when she stated: "I went in against my will because I had to go in there to talk to [Isabella], if I wanted to talk to [Isabella]." Moreover, to the extent that there exists any question of whether she was initially permitted into the apartment, [the trial court] fully credits the testimony of the victims, together with Officer Brian MacIntyre, who credibly testified that Appellant was told to leave on several occasions; she refused to do so; Mr. Sanchez did not block Appellant from leaving; and Appellant never told Officer MacIntyre that Mr. Sanchez physically prevented her from exiting the residence. Such testimony is likewise sufficient to establish that Appellant remained in the "place as to which notice against trespass" was actually given. *See* 18 Pa.C.S.A. § 3503(b)(1)(i).

Trial Court Opinion, 2/27/20, at 14 (citations to the record omitted) (emphasis in original).

Regarding the motives for engaging Isabella and/or Mr. Sanchez, the trial court noted that "although her motives may have been laudable," *id.* at 15, Appellant's motives are "entirely irrelevant when it comes to the much larger question of whether she was told to leave and why she did not leave." *Id.* We agree. Additionally, we reject Appellant's attempt to equate bona fide, reasonable mistake of fact (not alleged here), which under certain circumstances may operate to negate the element of criminal intent, with bona fide motives. Mistake and motive are two separate, distinct concepts. Even if there was a mistake as to whether Appellant had been invited to enter the apartment, it is undisputed that Appellant was asked to leave and Appellant

failed to do so. As also noted by the trial court, remaining in the apartment after being told to leave is sufficient to prove defiant trespass by Appellant.

We conclude, therefore, that the facts, as found and recounted by the trial court, are supported in the record and we detect no error in the trial court's conclusions. Accordingly, Appellant is entitled to no relief on her sufficiency of the evidence claim.

Next, Appellant challenges the weight of evidence, as assessed by the trial court, sitting as fact-finder. Regardless of whether the instant claim is waived,[1] it is well-established that it is not our role to reassess the weight of the evidence. *See*, *e.g.*, *Commonwealth v. Tarrach*, 42 A.3d 342, 345 (Pa. Super 2012). Appellant is entitled to no relief on her weight of the evidence claim.

Next, Appellant argues that the trial court erred in "limiting witness testimony for Appellant." Appellant's Brief at 8. The record shows that Appellant repeatedly attempted to undermine Mr. Sanchez by seeking to proffer evidence about Mr. Sanchez's prior non-payment of child support, his temper, and about an alleged deal between Mr. Sanchez and his ex-wife (Appellant's daughter), which called for Mr. Sanchez dropping charges against Appellant in exchange for ex-wife not pursuing child support obligations

---

[1] Appellant failed to raise a timely and proper challenge to the weight of the evidence, as per Pa.R.Crim.P. 607.

against Mr. Sanchez. Appellant claims that the failure by the trial court to allow "favorable" answers to certain questions violated her due process rights.

The trial court rejected the claim, noting that Appellant's attempts at damaging Mr. Sanchez's reputation were not relevant as to whether Appellant had committed defiant trespass. We agree. *See* Pa.R.E. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

Additionally, the evidentiary claim is waived. First, counsel for Appellant did not object to the rulings at the time of the proceedings. Failure to do so results in waiver. ***See***, ***e.g.***, ***Commonwealth v. Griffin***, 684 A.2d 589, 595 (Pa. Super. 1996) ("A failure to object to an offer of evidence at the time the offer is made, assigning the grounds [for objection], is a waiver upon appeal of any ground of complaint against its admission") (citation omitted). Second, Appellant failed to explain in her brief how the trial court erred in concluding that the proffered testimony was irrelevant. Indeed, absent any argument to the contrary, we agree with the trial court that the proffered testimony was irrelevant, and, as such, inadmissible.

Next, Appellant argues that she was unlawfully arrested. This issue was not raised before the trial court. Rather, Appellant raises it for the first time on appeal. However, we do not address issues raised for the first time on appeal. Accordingly, Appellant's challenge to the legality of her arrest is

waived.   ***See*** Pa.R.A.P. 302(a).   Additionally, we would reach the same conclusion on another ground.   While the issue is mentioned among the questions for our review, Appellant failed to address it in the argument section of her brief.

Finally, Appellant claims the Commonwealth, during her cross-examination, "somehow coerced [her] into providing misleading and/or false testimony.   She concludes that this testimony was harmful to her case.   It is Appellant's belief that this somehow violate[d] her Fifth Amendment Privilege against self-incrimination."   Trial Court Opinion, 2/27/20, at 7.   No relief is due.

First, the claim was raised for the first time on appeal, not at the time of her testimony.   Accordingly, the claim is waived.   ***See*** Pa.R.A.P. 302(a).

Second, even if not waived, it has no merit.   "In this regard, a defendant who takes the witness stand to testify waives the privilege against self-incrimination to the extent of relevant cross-examination."   Trial Court Opinion, 2/27/20, at 7 (citing ***Mitchell v. United States***, 526 U.S. 314, 321-322 (1999)).   To the extent Appellant argues that the Commonwealth compelled her to make her self-incriminating statements, the clam is without merit.   "The Fifth Amendment privilege is not self-executing, and answers are generally not considered compelled 'within the meaning of the Fifth Amendment unless the witness is required to answer over his valid claim of

the privilege.'" ***Commonwealth v. Knoble***, 42 A.3d 976, 979 (Pa. 2012) (quoting ***Minnesota v. Murphy***, 465 U.S. 420, 426 (1984)).

Because all claims raised here are either meritless or waived, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/19/2020